HENRY F. DUMAIN & wife *vs.* ANNE L. GWYNNE.

If a married woman who has been compelled to live separate from her husband by reason of his intemperance and crime is unable to provide for her children, and thereupon voluntarily gives them up to a charitable institution established for the purpose of furnishing homes to destitute children, under a written contract by which the children are to be placed out or adopted in a good family, and she is not to seek to discover them or deprive such family of them, the contract is valid; but this court, on a *habeas corpus* afterwards brought by the parents to recover their children, will inquire whether the welfare of the children is properly attended to, and in so doing will not be restricted to the ordinary modes of trial, nor require the children to be brought into open court, or their residence disclosed to their parents.

HABEAS CORPUS issued in behalf of Henry Dumain and Helen M. Dumain, his wife, to recover possession of their two children, Henry F. Dumain, aged nine years, and Eva M. Dumain, aged six years. The case was reserved by *Chapman*, J., for the determination of the whole court, on facts which are fully stated in the opinion.

*J. Rutter*, for the petitioners, cited Gen. Sts. *c.* 110, § 3; *Commonwealth* v. *Addicks*, 5 Binn. 520; *In the matter of Waldron*, 13 Johns. 419.

*R. H. Dana, Jr. & S. Snow*, for the respondent, cited *Curtis* v *Curtis*, 5 Gray, 535; *Day* v. *Everett*, 7 Mass. 145; *Pool* v. *Gott* 14 Law Reporter 267; *Commonwealth* v. *Maxwell*, 6 Law Reporter, 214; *State* v. *Smith*, 6 Greenl. 462; *People* v. *Kearney* 31 Barb. 430; *People* v. *Olmstead*, 27 Barb. 9; *Colston* v. *Morris* ᵀacob, 257, *note* a; *Blake* v. *Leigh*, Ambl. 306; *Rex* v. *Delavau*

Dumain & wife *v.* Gwynne.

3 Burr. 1436; Fcrsyth on Custody of Inf. §§ 36–38, 63; Gen. Sts. *c.* 110, §§ 2, 3; *c.* 111, § 2.

CHAPMAN, J. The common law regards the father as the natural guardian of his children, and recognizes his right to their custody. Formerly his right was held to be so much superior to that of the mother that when she had separated herself from him on the alleged ground of ill treatment, and taken with her their infant child, then at the breast, it was brought into court on *habeas corpus* and delivered to the father, though he was an alien, or was living in illicit intercourse with another woman, unless she could make it appear that he intended to abuse his right. *The King* v. *De Manneville*, 5 East, 221. *The King* v. *Greenhill*, 4 Ad. & El. 624. By *St.* 2 & 3 Vict. *c.* 54, the rights of the mother are now better provided for. But before that statute the courts of chancery in England were accustomed to disregard the strict legal rights of the father to the custody of the children, whenever the welfare or interests of the children required it. In some instances they have taken his children from him and placed them in the custody of strangers. They have regarded the welfare of the child as paramount to the rights of the father or mother. In this country our courts of law, while adopting the legal principle that the father is usually entitled to the custody of his children, have been inclined to modify it by adopting the equitable principle that this right must yield to considerations affecting the welfare of the children, and by regarding more highly the rights of the mother. *Commonwealth* v. *Briggs*, 16 Pick. 203. *Pool* v. *Gott*, 14 Law Reporter, 269. *State* v. *Smith*, 6 Greenl. 462. *Mercein* v. *The People*, 25 Wend. 102.

In some of the states the common law has been modified by legislation. In this commonwealth, if parents allow their children to become truants or to grow up in ignorance, the children may be taken by the municipal authorities and placed in houses of reformation or institutions of instruction. When the parents live separate, or when proceedings for divorce nave been instituted, this court has authority to make decrees upon the petition of either parent concerning the care, custody, education and

maintenance of the minor children; and as between father and mother it is provided that the rights of the parents, in the absence of misconduct, shall be held to be equal, and the happiness and welfare of the children shall determine the custody or possession. Gen. Sts. *c.* 107, §§ 36, 37. To what extent these rights impose obligations on the mother in respect to the maintenance of the children has never been determined. Provision is also made for the adoption of children, by which all the legal rights of both parents may be transferred to a stranger, by a decree of the probate court, and the child may become the legal heir of its adopted parent. If a parent does not consent to such adoption of his child, or if he is not found in the state, the probate court may, after the publication of certain specified notices, decree without his consent that the child shall, to all legal intents and purposes, be the child of the person petitioning for the decree. Gen. Sts. *c.* 110. This statute regards the happiness and welfare of the children as being much more important than the legal rights of either parent. Independently of the statute, it is held by this court that a father may transfer to his child his right to the services and earnings of the child, and is bound by his contract or gift on this subject, and that he may by his misconduct forfeit his right to the custody and services of his child either temporarily or permanently. *Abbott* v. *Converse*, 4 Allen, 530, and authorities there cited.

Cases like the present should be decided with a due regard to the rights and also to the affections of the parents, but with a paramount regard for the welfare of the children. It should be kept in mind that one of the important objects of the law is to encourage and promote as far as possible the exercise of mutual affection between parents and children, and that one of the purposes of education is to train children to the cultivation of filial affection. But unfortunately there are cases where the policy of the law is best promoted by the separation of children from one or both of their parents.

In this case the father had disqualified himself from taking proper care of his children in their early infancy by his intemperate habits. In addition to this, he committed the crime of

burglary, for which offence he was sentenced to the state prison for the term of three years. His right to the custody of his children was then forfeited; but it is not necessary to decide whether such a forfeiture would under all circumstances be permanent. His wife, being compelled to live separate from him, was under our statutes entitled to the custody of the children as against him; and if she had found persons ready to adopt them, a decree for their adoption might have been obtained, and by virtue of such a decree all the rights of both parents to the custody and control of the children would have ceased. If she chose to make provision for them without procuring such a decree, it would be unreasonable to hold that such an arrangement would be binding only so long as the father remained in prison. The present policy of our law requires us to regard any reasonable arrangement made by her as valid against herself and her husband, though it should extend through the whole term of the children's minority, subject of course to statute regulations respecting apprenticeship, and any other positive provisions of law.

Not long after her husband's confinement in prison, she went to the Temporary Home for Destitute Children. It was incorporated by this name "for the purpose of affording shelter and support to children and other persons destitute of a home, until more permanent provision can be made for them." She there found the respondent, Miss Gwynne, who was and still is the matron of the institution, and the agent of the board of managers, and represented to her that she could not take care of the children, and should never live with her husband again, and she freely signed the following contract:

"Boston, March 3, 1860. For and in consideration of expenses already incurred by the Managers of the Temporary Home for the Destitute, in the case of my child Eva Manetta, two years of age, and in consideration of a suitable place being found for her in a good family into which she may be adopted and suitably provided for and educated, I hereby engage, of my own free will, to give her up to the managers of the institution, to be placed out as they may judge best, or for adoption into a good

family; and in case of the latter, I now engage that I will not seek to discover, to molest, or to deprive them of the child, but that I will rely upon the matron and managers to dispose of her as they may judge best for the good of the child; and I now agree to give her up to them fully and unreservedly.  Helen M. Dumain."  A similar agreement was also made in respect to her son.  Under these agreements the children were received by the respondent.  We think the contracts had as much validity as if they had been signed by the husband.

He was discharged from imprisonment four months before his time expired, for his good behavior.  He and his wife have since lived together; he has industriously pursued his trade as a blacksmith; his character and conduct have been good; he has lived comfortably and laid up some property.  He and his wife are now able to support their children comfortably, and are de-sirous to do so, and the object of this process is to obtain the custody and control of them.

The respondent declines to produce them or to state where they are, and alleges that she has given them to a family where they are well treated and educated; that they have become much attached to the family and the family to them; that it would be injurious to the children to have communication with the parents, and that the rules and practice of the institution forbid her to produce them or to disclose where they are.  She also says that neither of the petitioners has any legal right to them, but that Dumain has forfeited his right; that the contract of the wife is legal and binding, and that the persons who have the children have incurred considerable expense in their main-tenance and education.  To show the importance of the ques-.tions involved, she states that the managers of the institution have disposed of many other children in a similar manner.

Without holding that the rights of either parent in respect to the children are absolutely lost, we must nevertheless hold that they are subject to the rights of the other party to the contract above mentioned, it having been freely and fairly made, and being a suitable contract for the wife to make.  But the rights of the corporation under it depend upon its fulfilment in good

faith on their part, and on the part of the persons to whom they have transferred the custody of the children.

The court has power upon this process to inquire fully into the matter; and as the liberty and welfare of the children are involved, the judge who hears the case ought to satisfy himself whether the children are improperly restrained, and whether their comfort and education are properly attended to. He is not restricted to the ordinary modes of trial, but may direct that the children be brought before him, and may examine them privately, and may also avail himself of affidavits or other reasonable and proper sources of evidence. *Pool* v. *Gott, ubi supra.* Hurd on Habeas Corpus, 303.

If the children were of suitable age, he might to some extent be influenced by their opinions and preferences. But the petitioners have not, in the absence of all reason to believe the contract is disregarded, a right to require the production of the children in court, or to be informed where they are. In some of our public institutions it has been deemed expedient to keep parents in ignorance of the place where homes have been found for their children, on account of the disposition often manifested to visit them and excite uneasiness and discontent in their minds. Such influences may be feared in this case, and there may be just ground for the suggestion made by the respondent's counsel, that if the former character of the father were made known among the present schoolmates and associates of the children, it might cause annoyance and injury to them at their present tender age. The children ought not to be thus exposed, unless the judge who hears the cause shall have some ground to believe that their welfare requires it.

The case is to be further heard, upon an amended answer and such further evidence as the judge who hears it shall deem proper upon the principles here stated.

After the foregoing decision a hearing was had before *Chapman,* J., who was satisfied upon the evidence that the children were disposed of in the manner stated by Miss Gwynne, that they were members of a good family in this commonwealth, and

subjected to no undue restraint, and treated kindly and affection-ately, and that it is the intention of those who have taken them to give them an education much better than their parents could give them. All further proceedings in the case were thereupon stayed.